IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KATHERINE PROFIT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Civ. A. H-14-0850 |
| | § | |
| KLEIN INDEPENDENT SCHOOL | § | |
| DISTRICT, | § | |
| | § | |
| Defendant. | § | |

## OPINION AND ORDER OF DISMISSAL

Pending before the Court in the above referenced cause, alleging intentional discrimination in denying Plaintiff Katherine Profit ("Profit") a reasonable accommodation for her disabilities in violation of the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. §12101, *et seq.*, are Defendant Klein Independent School District's ("KISD's") motion to dismiss (instrument #13) and amended motion to dismiss (#18) pursuant to Federal Rule of Civil Procedure 12(b)(1). While the Court assumes that the substance of the amended motion supersedes the first motion, there are documents attached to the first motion that are relevant to both and which the Court considers in resolving the motions.

### Standard of Review

Rule 12(b)(1) allows a party to move for dismissal of an action for lack of subject matter jurisdiction. The party asserting that subject matter exists, here the plaintiff, must bear the burden of proof by a preponderance of the evidence for a 12(b)(1) motion. *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008); *Ramming v. United States*, 281 F.3d

-1-

158, 161 (5th Cir. 2001).  In reviewing a motion under 12(b)(1) the court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.  *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is characterized as either a "facial" attack, i.e., the allegations in the complaint are insufficient to invoke federal jurisdiction, or as a "factual" attack, i.e., the facts in the complaint supporting subject matter jurisdiction are questioned.  *In re Blue Water Endeavors, LLC,* Bankr. No. 08-10466, Adv. No. 10-1015, 2011 WL 52525, *3 (E.D. Tex. Jan. 6, 2011), *citing Rodriguez v. Texas Comm'n of Arts*, 992 F. Supp. 876, 878-79 (N.D. Tex. 1998), *aff'd*, 199 F.3d 279 (5th Cir. 2000).  A facial attack happens when a defendant files a Rule 12(b)(1) motion without accompanying evidence.  *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).  In a facial attack, allegations in the complaint are taken as true.  *Blue Water*, 2011 WL 52525 at *3*, citing Saraw Partnership v. United States*, 67 F.3d 567, 569 (5th Cir. 1995).

If it is a factual attack, the Court may consider any evidence (affidavits, testimony, documents, etc.) submitted by the parties that is relevant to the issue of jurisdiction.  *Id., citing Irwin v. Veterans Admin.*, 874 F.2d 1092, 1096 (5th Cir. 1989).  A defendant making a factual attack on a complaint may provide supporting affidavits, testimony or other admissible

evidence.   *Patterson v. Weinberger*, 644 F.3d 521, 523 (5th Cir. 1981).   The plaintiff, to satisfy her burden of proof, may also submit evidence to show by a preponderance of the evidence that subject matter jurisdiction exists.   *Id*.   The court's consideration of such matters outside the pleadings does not convert the motion to one for summary judgment under Rule 56(c). *Robinson v. Paulson*, H-06-4083, 2008 WL 4692392 at *10 (S.D. Tex. Oct. 28, 2008), *citing Garcia*, 104 F.3d at 1261.   "Unlike in a facial attack where jurisdiction is determined upon the basis of allegations of the complaint, accepted as true[,] when a factual attack is made upon federal jurisdiction, no presumption of truthfulness attaches to the plaintiff's jurisdictional allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In a factual attack, the plaintiffs have the burden of proving that federal jurisdiction does in fact exist."   *Evans v. Tubbe*, 657 F.2d 661, 663 (5th Cir. 1981).   In resolving a factual attack on subject matter jurisdiction under Rule 12(b)(1), the district court, which does not address the merits of the suit,[1] has

---

[1] As the court explained in *Taylor v. Dam*, 244 F. Supp. 2d 747, 753 (S.D. Tex. 2003),

> It is well settled that "a district court has broader power to decide its own right to hear the case than it has when the merits of the case are reached." [*Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.). *cert. denied*, 454 U.S. 897 (1981).] "Jurisdictional issues are for the court--not the jury--to decide, whether they hinge on legal or factual determinations. *Id*. To determine whether jurisdiction exists, the court will generally resolve any factual disputes from the

significant authority "'to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Robinson v. Paulson*, No. H-06-4083, 2008 WL 4692392, *10 (S.D. Tex. Oct. 22, 2008), *quoting Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997), and *citing Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986).

**Relevant Factual Allegations of the First Amended Complaint (#6)**

Profit began working for KISD's Transportation Department in approximately January 2009 by helping special needs students to get on and off school buses and monitoring them during transport to ensure the safety of all passengers and the bus driver.  In March 2011, in the course and scope of her employment she suffered injuries to her back, left shoulder, left arm, and neck when she was pushed into a wall by a student passenger.  As a result, and at the advice of a physician, she was placed on light duty work.  Subsequently in February 2012, she was in an automobile accident, which exacerbated her earlier injuries, for which she was prescribed pain medicine.  From March or April 2012 through August 2012, at the advice of medical professionals she informed KISD that her injuries and medication prevented her from

---

pleadings and the affidavits submitted by the parties.  *See Espinoza v. Missouri Pac. R.R. Co.*, 754 F.2d 1247, 1248 n.1 (5th Cir. 1985). The court may also conduct an evidentiary hearing and "may hear conflicting written and oral evidence and decide for itself the factual issues which determine jurisdiction." *Williamson*, 645 F.2d at 413; *see Menchaca v. Chrysler Credit Corp.*,613 F.2d 507, 511-12 (5th Cir.), *cert. denied*, 449 U.S. 953 . . . (1980).

heavy lifting and effectively assisting emotionally challenged students and that she was to avoid lifting, pulling, and/or pushing weights of ten pounds or more, as well as movements that would require reaching objects above the level of her shoulders, and she requested a reassignment accommodation. Profit also claims that she was diagnosed with post traumatic stress disorder caused by job-related matters. She maintains that these medical problems rendered her disabled, unable to perform life activities that the average person in the general population can perform.

Nevertheless, she claims that KISD denied and continued to deny her repeated requests for a reasonable accommodation, specifically she asked for a reassignment to an available position in an office setting with light duty desk jobs, a position which she claims was available at that time and which had been customarily provided to other similarly situated injured employees. She claims that such an accommodation would not have imposed any hardship or burden on KISD nor posed any safety issues.

Profit states that in April 2012 KISD offered her a modified work accommodation which would have required her to perform the same or similar functions that she had been medically instructed not to perform and which would have placed her personal safety at risk of further injury as well as posed a possibility of injury to students and bus operators. She argues that as a result she was forced to resign.

**Substantive Law**

Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a), prohibits discrimination against an employee on the basis of physical or mental disability and requires an employer to make reasonable accommodations necessary to allow an employee with a disability to perform the essential functions of her job unless the accommodation would impose an undue hardship on the employer.   Section 12112(a) of the ADA provides that no covered entity shall "discriminate" against a qualified individual with a disability because of the disability of such an individual in regard to, *inter alia*, "the hiring, advancement, or discharge of employees . . . and other terms, conditions, and privileges of employment."   In addition, Section 12112(b)(5) states that the term, "discriminate," includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . .  unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operations of the business of such covered entity."  A "qualified individual with a disability" is defined as "an individual with a disability  who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.  42 U.S.C. § 12111(8).

A covered employer must provide reasonable accommodations to an otherwise qualified person with a disability unless the employer can show that the accommodation "would impose an undue hardship" on the employer.  42 U.S.C. § 12112(b)(5)(A).

The plaintiff bears the burden of requesting reasonable accommodations. *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007).

While the employee has a right to a reasonable accommodation, the right is not to his preferred accommodation. *Id., citing id.* "'The employee bears the burden of proving that an available position exists that he was qualified for and could, with reasonable accommodations, perform.'" *Id., quoting Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007). "'A disabled employee has no right to a promotion, to choose what job to which he will be assigned, or to receive the same compensation as he received previously.'" *Id., quoting id.* at 316. "'[W]hen an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee, the employer violates the ADA.'" *Id., quoting Loulseged v. Akzo Nobel, Inc.*, 178 F.3d 731, 736 (5th Cir. 1999). "'[A]n employer cannot be found to have violated the ADA when responsibility for the breakdown of the 'informal interactive' process is traceable to the employee and not the employer.'" *Id., quoting id.*

The ADA was amended by the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"), which by its express language became effective on January 1, 2009, while the final regulations issued by the EEOC became effective on May 25, 2011. 76 Fed. Reg., 16978, 16999 (2011). "The ADAAA is principally aimed at reversing Supreme Court precedent perceived as improperly narrowing the scope of protection originally intended by drafters of the ADA." Louis P. DiLorenzo, *The Intersection of the FMLA and*

*ADA--As Modified by NDAA, ADAAA and GINA*, 860 PLI/Lit 47, 83-84 (June 23, 2011); 29 C.F.R. § 1630.1(c)(4)("reinstating a broad scope of protection under the ADA"; "the definition of 'disability' shall be construed broadly in favor of expansive coverage to the maximum extent permitted by the terms of the ADA").  The EEOC emphasized that "the primary object of attention in cases . . . should be whether the covered entities have complied with their obligations and whether discrimination has occurred, not whether the individual meets the definition of disability."  29 C.F.R. § 1630.1(c)(4).

Mitigating measures (such as medications, medical devices and assistive technology) are ignored when assessing whether an impairment substantially limits a person's major life activities.  ADA Amendments Act of 2008, Sec. 4 § 3(4)(E)(1), 122 Stat. 3553, 3556.  Moreover, the court may consider the negative effects of a mitigating measure, e.g., effects of medication, in determining whether the individual is substantially limited in a major life activity.

Simply having an impairment is insufficient to make one disabled under the statute; a plaintiff must also show that the impairment substantially limits a major life activity.  *Chevron Phillips,* 570 F.3d at 614, *citing Toyota Motor*, 534 U.S. 184, 195 (2002).  The implementing regulations in § 1630.2(I) provides a non-exhaustive list of major life activities, which include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and walking."  29 C.F.R. § 1630.2(I); *id.*  Moreover, "to be substantially limited  means to

be unable to perform a major life activity that the average person in the general population can perform or to be significantly restricted in the ability to perform it." *Id.*, *citing* 29 C.F.R. § 1630.2(j).  In deciding whether a person is "substantially limited in a major life activity, the Equal Employment Opportunity Commission ("EEOC") advised that courts should consider: '(i) the nature and severity of the impairment, (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.'"  *Id.* at 614-15, *citing* 29 C.F.R. § 1630.2(j).  "[W]hether an individual is disabled under the ADA . . . remains an individualized inquiry." *Id.* at 620.

The ADAAA directs that "substantially limits" should not be as strictly construed as some courts have required in the past and should not require "extensive analysis."  ADA Amendments Act of 2008, §2(b)(5), 122 Stat. 3553, 3558.  The ADAAA has added "major bodily functions" (e.g., the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions) to the ADA's list of major life activities, including caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, standing, sitting, reaching, lifting, bending, reading, concentrating, thinking, communicating, and working, while defining "physical or mental impairment" as any physiological disorder or condition, cosmetic disfigurement or anatomical loss affecting one or more body systems, as well as mental or

psychological disorder.  ADA Amendments Act of 2008, Pub. L. No. 110-325, Sec. 4, § 3(2)(A) and (B), 122 Stat. 3553, 3555.

Moreover, while retaining the basic definition of disability under the ADA ("a physical or mental impairment that substantially limits one or more major life activities"), "disability" now includes an impairment that is episodic or in remission if it would substantially limit a major life activity when active; examples include epilepsy, hypertension, asthma, diabetes, major depression, bipolar disorder, schizophrenia, and cancer.  ADA Amendments Act of 2008, Sec. 4, § 3(4)(D), 122 Stat. 3553, 3555; 29 C.F.R. § 1630(j)(5).  An impairment lasting less than six months can be substantially limiting.  29 C.F.R. § 1630.2(j)(1)(ix).  An impairment that is in remission but may return in a substantially limiting form is a disability under the ADAAA.  29 C.F.R. § 1630.2(j)(1)(vii).  The ADAAA also amended its earlier definition of "major life activity" as "activities that are of central importance to most people's daily lives," instead indicating that the word "major" must "not be interpreted strictly to create a demanding standard for disability."  29 C.F.R. § 1630.2(i)(2).  Under the ADAAA, tasks involving major life activity of manual tasks, such as fine motor coordination, grasping, or pressuring, "need not constitute activities of central importance to most people's lives."  Appendix to Part 1630, *Interpretive Guidance on Title I of the Americans With Disabilities Act* § 1630.2(i); 76 Fed. Reg. at 17008.  To be "substantially limiting" an impairment does not have to prevent or

significantly restrict a person from performing a major life activity. *Id.*

Before a complainant may file suit under the ADA, she must exhaust the statute's administrative prerequisites. *Dao v. Auchan Hypermarket*, 96 F.3d 787, 788-89 (5th Cir. 1996). The ADA incorporates the enforcement procedures of Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. § 12117(a) ("The powers, remedies, and procedures set forth in sections 2000e-4, 2000e-5, 2000e-6, and 2000e-9 of this title shall be the powers, remedies and procedures that this subchapter provides . . . to any person alleging discrimination on the basis of disability in violation of any provision of this chapter, or regulations under section 12116 of this title, concerning employment."). The plaintiff must file a charge of disability discrimination  with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the illegal act, or within 300 days if she has filed a complaint with the state or local agency, i.e., the Texas Workforce Commission Civil Rights Division in Texas, and receive a statutory right-to-sue letter from the EEOC before filing suit in federal court. 42 U.S.C. § 2000e-5(e)(1); *DAO*, 96 F.3d at 788-89; *Ikossi-Anastasiou v. Board of Supervisors of La. State Univ.*, 579 F.3d 546, 549 (5th Cir. 2009); *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 384 (5th Cir. 2002); *Cisneros v. DAKM, Inc.* , No. 7:13-CV-556, 2014 WL 258755, at *2 (S.D. Tex. Jan 23, 2014). If the EEOC fails to act within 180 days and there is no final agency action, under § 2000e-16, "after one hundred and eighty days from the filing of the initial charge with the department . . . an employee . . . if

aggrieved by the . . . failure to take final action on his complaint, may file a civil action." *Thomas v. Napolitano*, 449 Fed. Appx. 373, at *1-2 (5th Cir. Nov. 9, 2011), *citing Martinez v. Department of U.S. Army*, 317 F.3d 511-12, 513 (5th Cir. 1003), *citing Munoz v. Aldridge*, 894 F.2d 1489, 1492-94 (5th Cir. 1990). If the EEOC issues a right-to-sue letter, the employee must file a civil action in federal court within ninety days.

Some courts in the Fifth Circuit have held that the requirement of filing a charge with the EEOC is jurisdictional, but most have held that it is a statutory precondition to filing suit in federal court. *See, e.g., Pacheco v. Mineta*, 448 F.3d 783, 788 n.7 (5th Cir. 2006), *cert. denied*, 549 U.S. 888 (2006):

> There is disagreement in this circuit on whether a Title-VII prerequisite, such as exhaustion, is merely a prerequisite to suit, and thus subject to waiver and estoppel, or whether it is a requirement that implicates subject matter jurisdiction. The Supreme Court has held that the EEOC or EEO filing deadlines are not jurisdictional. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 . . . . (1982). . . . However, the reasoning in *Zipes*, which cites our *en banc* holding in *Coke [v. General Adjustment Bureau, Inc.*, 640 F.2d 58 (5th Cir. 1981)] with approval, relies heavily on legislative history and Supreme Court precedents that characterize the filing deadlines as statutes of limitations."

*See also Taylor v. Books A Million*, 296 F.3d 376, 379 (2002)("Although the filing of an EEOC charge is not a jurisdictional prerequisite, it is a 'precondition to filing suit in district court.'"); *Clark v. Kraft Foods, Inc.*, 18 F.3d 1278, 1279 (5th Cir. 1994)("As a jurisdictional predicate Clark had to exhaust EEOC remedies for sex-based discrimination . . . ."). In

*Pachego* the Fifth Circuit affirmed the district court's dismissal under Rule 12(b)(1) for failure to exhaust administrative remedies.  448 F.3d at 795.

The Fifth Circuit has held that the 180-day limitations period begins to run on the date when the discriminatory act occurs, not when the victim perceives that a discriminatory motive caused the act.  *Merrill v. Southern Methodist University*, 806 F.2d 600, 605 (5th Cir. 1986)(regarding Title VII), *citing Delaware State College v. Ricks*, 449 U.S. 250 (1982); *Reveles v. Napolitano*, 595 Fed. Appx. 321, 324 (5th Cir. Dec. 12, 2014)(Title VII); *Simotas v. Kelsey-Seybold*, 211 Fed. Appx. 273, 275 (5th Cir. Dec. 6, 2006)("The relevant date for determining the beginning date for the limitations period [for the ADA] is the day the employee learns that the challenged decision has been made, not when she feels the effects of that decision."); *Ramirez v. City of San Antonio*, 312 F.3d 178, 181 (5th Cir. 2002)(ADA)("We have held that the limitations period on an employment discrimination claim 'begins to run from the time the complainant knows or reasonably should have known that the challenged act has occurred.'")(*quoting Vadi v. Mississippi State Univ.*, 218 F.3d 365, 371 (5th Cir. 2000). The statute of limitations begins to run at the time of the allegedly discriminatory decision, even if the plaintiff's employment continues, and the consequences of the allegedly discriminatory act--termination--do not occur until later.  *Del. State College v. Ricks*, 449 U.S. 250, 257-58 (1980)("Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination. . .

. [T]he only alleged discrimination occurred--and the filing limitations periods therefore commenced--at the time the tenure decision was made and communicated to Ricks.  That is so even though one of the *effects* of the denial of tenure-the eventual loss of a teaching position-did not occur until later.").

**KISD's Motion to Amend and First Amended Motion to Dismiss**

To its original motion to amend (#13), KISD attaches *inter alia* a copy of Profit's EEOC charge alleging disability discrimination, dated May 28, 2013, and a copy of Profit's charge filed with the Texas Workforce Commission dated May 23, 2013 (#13-1), and Profit's Notice of Resignation/Retirement to KISD, dated and effective as of March 21, 2012.

KISD attaches two business records to its amended motion to dismiss (#18).  The first, Ex. A-1 (#18-3), is a letter sent by Profit and received by KISD on August 4, 2012, stating that she had been on leave of absence since March of 2012 because of side effects of pain medication which made her unable to perform her job duties.  It further represents that on March 26, 2012 she had a panic attack, ascribed to the new medication, she had to be taken to the hospital by ambulance, and her doctor advised her to be placed on light duty in an office setting and not placed on a bus with children.  In a footnote, KISD explains that this March 26 date on page 1 of Exhibit A-1 is presumably a typographical error because the incident she describes occurred on her last day at work, which was March 20, 2012.  On page 2 of the same document, she correctly refers to the incident "on March 20, 2012."  Profit's letter also states that she had a previous attack

-14-

unrelated to her job on February 21, 2012, when she fainted, but which medical condition would affect her function as a bus attendant, and that she had already written KISD several letters about the problem.  After the March 2012 incident resulting in her injuries, Profit asserts that she informed KISD of her medical condition and requested an office job as a reasonable accommodation, but in response KISD had her "placed back on the bus."  Finally the letter states, "Management has been well aware of my medical issue and refuse [*sic*] to remove me from the bus while under doctor care for the job injury.  This inccident [*sic*] could have been avoided."  #18-3, Ex. A-2 p.2.

Exhibit A-2 (#18-4), is a KISD Leave of Absence Request, signed by Profit on September 14, 2012, asking for a leave of absence dating back to March 20, 2012, her last day at work at KISD.  Her resignation was accepted by KISD that same date (March 20, 2012).  *Id.*[2] at p. 2.

KISD emphasizes Profit's allegation in her First Amended Complaint (#6 at pp. 4-5, ¶ 18 that KISD violated the ADA "as early as March or April 2012" when KISD offered her a modified bus attendant position in April 2012 (which purportedly required functions she had been medically advised should be avoided), rather than the desk job she had requested.  She did not file her

---

[2] On September 21, 2012, Profit submitted a Notice of Resignation as of March 21, 2012; her last day at work had been March 20, 2012.  #13-1, Ex. A-2.  Subsequently KISD determined that Profit instead wanted to be placed on an extended unpaid administrative leave, and KISD complied, extending it back to March 20, 2012, to allow her to reapply for active duty after recovery from her disability.  #18-4, Ex. A-2.

EEOC charge until May 23, 2013, more than a year later.  The
relevant limitations period for filing an EEOC charge begins to
run when an employee first knows or reasonably should have known
that a violation of the ADA had occurred.  *See Vadi*, 218 F.3d at
371).  KISD argues that in this case it began to run at the very
latest when Profit was offered this modified bus attendant
position in April, an offer that implicitly denied her request for
her proposed office job as a reasonable accommodation.
Additionally, however, KISD emphasizes the documents (Exhibits A-
1, A-2, and A-3) attached to its motion show that Plaintiff last
reported to work on March 20, 2012, her EEOC charge does not
allege any facts occurring after April 2012, and her August 2012
correspondence to KISD concedes that she was placed in a bus
attendant position in March 2012 after she notified KISD of her
request for an office job to reasonably accommodate her alleged
disability.

### Profit's Response (#22)

Profit contends that the modified work accommodation
still on the bus offered to her by KISD in April 2012 had her
performing the same duties she was medically restricted from
perform, and was therefore unsatisfactory.  Noting that "[t]he
duty to reasonably accommodate an individual's disability
continues for as long as the limitation persists, she maintains
that KISD failed to meets its continuing obligation to reasonably
accommodate her disability.  *Ralph v. Lucent Technologies, Inc.*,
135 F.3d 166, 172 (1st Cir. 1998)("The duty to provide reasonable
accommodation is a continuing one . . . and not exhausted by one

effort."); *in accord, Bultemeyer v. Fort Wayne Community Schools*, 100 F.3d 1281, 1285 (7th Cir. 1996). She renewed her request on or around August 12, 2012, but KISD still failed to accommodate her. She argues that the renewed request and KISD's subsequent denial triggered a new limitations period. Profit argues that KISD's denial of her March or April 2012 request for accommodation was a discrete act of discrimination that may have triggered the 300-day statutory limitations period, but that her renewed request in August 2012, also rejected by KISD, made her charge filed with the EEOC, complaining of the March/April 2012 denial of reasonable accommodation, timely. *Elmenayer v. ABF Freight System, Inc.*, 318 F.3d 130, 135 (2d Cir. 2003)("[W]e do not decide what the effect would  be if the employee renews the request for an accommodation.").[3]

        Alternatively, should the Court determine her charge was untimely, Profit argues that on or about March 2012, when she was without assistance of counsel, she searched for a federal agency with whom she could file a complaint of disability discrimination and did so with the U.S. Department of Education, Office of Civil Rights, on or about March 22, 2012, although she concedes that her complaint did not mention a failure to accommodate her. Therefore her claim should not be dismissed because she raised a claim reasonably related to those asserted in the EEOC filing even

_____

        [3] Questioning Profit's choice of authority as inapposite, KISD points out that *Elemenayer* does not support her continuing violation argument because it explicitly declined to rule on the effect on an employee's renewed request for accommodation.

though it was not addressed to the EEOC.  *Cornwell v. Robinson*, 23 F.3d 694, 706 (2d Cir. 1994)("In an action in which those procedural requirements have been satisfied, the plaintiff may raise any claim that is 'reasonably related' to those asserted in the EEOC filing, even if that claim was not expressly addressed by the EEOC.".

### KISD's Reply (#23)

Observing that Profit has acknowledged that she first notified KISD of her request for accommodation in March 2012, that her request was denied in March or April 2012, that she failed to file a charge with the EEOC until May 23, 2013, and that she had actual knowledge of the denial of her request for an accommodation on or before March 22, 2012, KISD insists her claim is time-barred under 43 U.S.C. § 2000e-5(e).

Her claim that her renewed request for the same accommodation in August 2012 gave rise to a separate and discrete violation of the ADA that provides its own 300-day limitations period is in essence an effort to use the continuing violation doctrine.  Because her second request in August 2012 constitutes a later effect of the original violation, it fails to qualify for the continuing violation doctrine.  *Hendriz v. Yazoo City*, 911 F.2d 1102, 1103 (5th Cir. 1990)("If the discrimination alleged is solely the result off a single violation that occurred outside the statute of limitations, the later effect of this act does not constitute a continuing violation of the statute.").[4]  The key

_____

[4] *Citing inter alia Delaware State College v. Ricks*, 449 U.S. 250, 257 (when a professor charged unlawful termination by a

question is "whether the original discriminatory act had a 'degree of permanence that should trigger an employee's awareness of and duty to assert her rights.'"  *Hendrix*, 911 F.2d at 1103, *citing Berry v. Board of Supervisors*, 714 F.2d 971 (5th Cir. 1983).[5] Here, KISD argues that it made its decision to deny Profit's request for a desk job as an accommodation for her claimed disability in March/April 2012, and Profit admits that KISD merely maintained its original position in response to her August 2012 reurging her prior request.  KISD urges that this reiteration must be seen as

_____

university, holding that the discriminatory denial of tenure, rather than the subsequent termination of employment one year later, was the triggering event for purposes of the statute of limitations; "Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination."), *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 557-58 (1977)(rejecting plaintiff's argument that a current action was a continuing violation and finding that "the seniority system gives present effect to a past act of discrimination" and "United was entitled to treat that past acts as lawful after [the plaintiff] failed to file a [timely] charge of discrimination"), and *Lorance v. AT&T Technologies*, 490 U.S. 900 (1989)(proper time to challenge facially discriminatory seniority system was when the new seniority system was instituted, these statutes of limitations began to run, and employees' rights were diminished).

The Court observes that *Lorance* was superceded when the Civil Rights Act of 1991 was enacted, while *United Air Lines* was superseded in part by statute, Lilly Ledbetter Fair Pay Act Pub. L. No. 111-2, 123 Stat. 5 (2009).

[5] *Berry*, 715 F.2d at 981, established a nonexhaustive, three-factor test to determine whether a continuous violation exists:  (1) "[S]ubject [M]atter.  Do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation?"; (2) "[F]requency.  Are the alleged acts recurring . . . or more in the nature of an isolated assignment or employment decision?"; and (3) "[D]egree of [P]ermanence [perhaps of most importance]  Does the act have the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate?."

a later effect of KISD's original denial, and therefore the continuing violation doctrine does not operate to save Plaintiff's claims when she repeated her request within the 300-day window of time.

KISD, stating that no court in the Fifth Circuit appears to have dealt with the question whether a reiterated request for an accommodation may renew a statute of limitations, cites *Hall v. The Scotts Co.*, No. 2:05-CV-732, 2005 WL 3499933 (S.D. Ohio Dec. 21, 2005), *aff'd*. 211 Fed. Appx. 361 (6th Cir. Nov. 7, 2006) in which in March 2003 an employee forklift operator asked his employer to provide him with a special respirator/hardhat to aid with his breathing condition caused by decreased lung capacity. In August 2003 The Scotts Company refused his request, claiming safety concerns.  In November 2003 Hall offered to buy the respirator himself if he would be allowed to wear it while working, and the company again denied his request on December 20, 2003.  On October 13, 2004 Hall filed a charge of discrimination with the EEOC, which chose not to act in the coming litigation, and Hall filed suit under the ADA.  The Scotts Company filed a motion to dismiss the case as time-barred because the charge was filed more than 300 days after the initial denial in August 2003. The court converted it to a motion for summary judgment and granted it in favor of The Scotts Company.  Although Hall argued that the parties were involved in an "interactive process" to accommodate his disability that did not culminate until December 20, 2003, the Court found his November offer to buy the respirator

was "an impotent attempt" to renew his earlier request and "merely
a consequence of its [earlier] discriminatory act."

KISD asserts that it is well established that an
employee may not extend or circumvent the limitations period by
requesting the modification or reversal of an employer's earlier
action. *Delaware State College v. Ricks*, 449 U.S. at 261 n.15
("Mere requests to reconsider . . . cannot extend the limitations
period applicable to the civil rights laws.").  "To hold to the
contrary would expose employers to a virtually open-ended period
of liability and would . . . read the statute of limitations right
out of existence." *Abrams v. Baylor College of Medicine*, 805 F.2d
528, 534 (5th Cir. 1986).

In sum, insists KISD, because the 300-day limitations
for *all* of Profit's claims began in March/April 2012 with the
denial of her request for an accommodation, her claims are time-
barred.

### Court's Determination

This Court agrees with KISD's analysis as a matter of
law.

First, it concurs with KISD that Profit's August 2012
letter again requesting an office job as an accommodation for her
alleged disability was merely a reiteration of her March/April
2012 request and of KISD's denial and not independently
discriminatory.  Opining about *Delaware State College v. Ricks*
that a plaintiff "could not use a termination that fell within the
limitations period to pull in the time-barred [denial of tenure]

discriminatory act," the Supreme Court in *National R.R. Passenger Corp.,* 536 U.S. at 113, wrote,

> We derive several principles from these cases. First, discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180- or 300-day time period after the discrete discriminatory act occurred. The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed.

In the instant case, in addition to being merely reiterated allegations of Profit's March/April 2012 denial of accommodation, her August 2012 letter was not "independently discriminatory" to warrant the latter claim's being able to restart the limitations clock on what became a clearly time-barred denial-of-reasonable-accommodation claim in March/April 2012.

Furthermore, the Court observes that in its affirmance of *Hall v. The Scotts Co.*, 211 Fed. Appx. at 363, the Sixth Circuit cites three decisions that support the district court's decision that Hall's attempt to renew his earlier, time-barred request for accommodation was merely a consequence of the earlier discriminatory act and not the culmination of an interactive process to accommodate his disability: *Conner v. Reckitt & Colman, Inc.*, 84 F.3d 1100, 1102 (8th Cir. 1996)("[A]llowing [the plaintiff] to restart the statute of limitations by sending a letter requesting reasonable accommodations after she has been

unequivocally fired would destroy the statute of limitations"); *Elmenayer v. ABF Freight Sys.*, 318 F.3d 130, 135 (2d Cir. 2003)(explaining, "The rejection of a proposed accommodation is a single completed action when taken, quite unlike the 'series of separate acts' that constitute a hostile work environment and 'collectively constitute' an unlawful employment practice"); and *Zdziech v. DaimlerChrysler Corp.*, 114 Fed. Appx. 469, 472 (3d Cir. 2004)("To permit [an employee] to reset the statutory requirements for the timely filing of a complaint merely by writing a new letter to his former employer would clearly vitiate the intent behind the 300-day time limit.").

Furthermore the Fifth Circuit acknowledged in *Henson*, 128 Fed. Appx. at 391,

> Under the continuing violation doctrine, a plaintiff is relieved of establishing that all of the alleged discriminatory conduct occurred within the actionable period if the plaintiff can show a series of related acts, one or more of which falls within the limitations period. *Felton v. Polles*, 315 F.3d 470, 487 (5th Cir. 2002). The Supreme Court has clarified, however, that discrete discriminatory acts are not actionable if time barred, even when they are related to acts complained of in timely filed charges. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. [at 113].

"The continuing violation doctrine does not apply when 'the relevant discriminatory actions alleged in the complaint '[are] the sort[s] of discrete and salient events that should put an employee on notice that a cause of action has accrued.''" *Jurach v. Safety Vision,* LLC, ____ F. Supp. 3d ____, 2014 WL 7151470, at *5 (S.D. Tex. Dec. 12, 2014), *quoting Windhauser v.*

*Bd. of Supervisors for Louisiana State Univ. & Agr. & Mech. Coll.*,
360 Fed. Appx. 562, 566 (5th Cir. 2910), *quoting Huckaby v. Moore*,
142 F.3d 233, 240 (5th Cir. 1998).   The *Jurach* court observed that
in *Henson v. Bell Helicopter Textron, Inc.*, 128 Fed. Appx. 387,
391 (5th Cir. Apr. 8, 2005), the Fifth Circuit, addressing an
alleged failure to accommodate in the repeated denial of a
plaintiff's requests for time off or scheduling changes that
occurred outside of the limitations period, determined that each
denial of such a request was a discrete act and the plaintiff
therefore did not establish a continuing ADA violation.   *Jurach*
cited as  examples of "[o]ther circuits [which] have similarly
refused to apply the continuing violation doctrine to [time-
barred] discrete denials of a plaintiff's accommodation requests,"
the following cases:  *Elmenayer v. ABF Freight Sys., Inc.*, 318
F.3d 130, 135 (2d Cir. 2003)("Once the employer has rejected the
proposed accommodation, no periodic implementation of that
decision occurs. . . . The rejection of a proposed accommodation
is a single complete action when taken, quite unlike the 'series
of separate acts' that constitute a hostile work environment and
'collectively constitute' an unlawful employment practice.
Although the *effect* is similar to the continued effect of being
denied a promotion or denied a transfer, denials that *Morgan*
offered as examples of a discrete [discriminatory] acts [that
start[] a new clock for filing charges alleging that act]."),
*citing National R.R. Passenger Corp.*, 536 U.S. at  113;  Aubrey*v.*
*City of Bethlehem, Fire Dep't*, 466 Fed. Appx. 88, 93 (3d Cir.
2012)("The nature of [the plaintiff's] claims do not involve

repeated conduct."); *Proctor v. United Parcel Service*, 502 F.3d 1200, 1210 (10th Cir. 2007)(finding that employer's denial of requested accommodation "constitutes a discrete act of alleged discrimination.").

Accordingly, the Court

ORDERS that KISD's motion to dismiss (#13) and amended motion to dismiss (#18) are GRANTED with prejudice. Because it is unclear in this Circuit whether such a dismissal is for lack of subject matter jurisdiction or in the nature of a statute-of-limitations bar, and because Profit has not alleged any facts that would support estoppel or waiver, the Court

ORDERS that the dismissal is pursuant to both Federal Rules 12(b)(1) and 12(b)(6).

**SIGNED** at Houston, Texas, this  23rd  day of  June , 2015.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE